LEE *v.* THE HIGHLAND BANK and FOWLER's Administrator.

The principle of the rule, that where a person becomes a surety in a note to be used for a particular object, the principal cannot divert it from that object without the surety's assent; applied as between the principal's administrator and the surety, in favor of the latter, to the proceeds of such a note remaining in the principal's hand at his death.

The administrator's claim to retain the proceeds is no better than that of the intestate would have been if he had been living.

 . Albany, Dec. 20, 1844; January 21, 1845.

 · THE bill was filed by Leonard Lee on the 12th day of April, 1844, against The Highland Bank, and John W. Brown, Esq. as administrator of Gilbert Ogden Fowler, late of the village of Newburgh, deceased; praying *to have a note delivered up and cancelled.* The note was for $1500, dated December 27th, 1843, and payable the first of May ensuing; was made by the complainant, payable to Mr. Fowler, indorsed by him, and was discounted by the Highland Bank, on the day of its date. The bank received from Lee the discount on the note, and delivered to him their draft on a New York bank for the $1500. It being found in Mr. Fowler's room after his death the same evening, indorsed by Lee, it was returned to the cashier of the bank by Mr. Fowler's son and was never used.

The opinion of the court states all the other facts that were deemed material.

*S. Stevens,* for the complainant.

*N. Reeve* and *M. T. Reynolds,* for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—The Highland Bank

having received the draft issued upon discounting the note in question, the same day that they parted with it; have very properly left the controversy to be settled between the complainant and the administrator of Fowler. The case has been argued on the footing that the draft, which was in Fowler's possession at his death, had come to the hands of the administrator.

On this basis, I think there will be no difficulty in arriving at a result which will be equitable in regard to the remarkable circumstances of the case, as well as conformable to established principles.

The facts are involved in much obscurity by the sudden death of Mr. Fowler. The transaction was not a mere exchange of notes, which of itself implies mutual benefit and accommodation. This is shown by Lee's paying the discount on the note to the bank and delivering to Fowler a draft for the whole $1500, and by the admission in the answer that Lee made his note and procured the draft solely for the accommodation and benefit of Fowler; while there is no pretence that Lee was to be benefitted in any manner by the operation.

I take these facts to be established. Mr. Fowler, being confined to his room by illness, sent for the complainant and procured him to give a note for $1500 payable to Fowler's order, to take it to the Highland Bank at Newburgh, of which Fowler was president, have it discounted, pay the discount, take the $1500 in a sight draft of that bank drawn on a New York bank, and to deliver the same to Mr. Fowler. This was all done for Fowler's sole benefit and accommodation.

The object which Fowler had in view, and for the promotion of which the complainant thus lent his credit, is stated in the bill; and I think it is substantially proved by the circumstances and the testimony of Isaac V. Fowler. The latter says his father was to pay to one of the heirs of his deceased brother-in-law, $1500 on the occasion stated in the bill, or one not materially variant; and that on the 24th of December, his father told the witness that he would send to the witness in New York, by the middle of that week, a draft for $1500 to pay to that heir.

This draft procured for Fowler by the complainant, was obtained on Wednesday of that week. It was drawn on New

York, on a letter sheet so as to be sent by mail. The coincidence of circumstances, in the absence of proof of any other occasion or object which Fowler had for such a draft, leads to the conclusion, that it was obtained for the specific purpose of being remitted to his son and paid to his brother-in-law.

It is not probable that Fowler made his request of the complainant without informing him at least in general terms for what he wanted the accommodation, and I am bound to infer that he stated the object truly.

His death the same evening, while the draft still laid upon his table in his sick room, prevented its ever being applied to the intended object.

The complainant therefore by the note in question, became the surety for Fowler to raise money and obtain a draft for a specific object and purpose. The money was raised and the draft procured, but owing to the sudden death of the principal, it never was applied to that object. For the determination of the point, it is deemed to be remaining in the hands of the administrator of the principal.

And the question is, which has the better right to the draft, in equity; the complainant, in order to withdraw the note he lent, or the administrator, to distribute it among the creditors of Fowler?

There can be but one answer to this question in the forum of conscience; and the law concurs in that response. The administrator's claim is no better than Mr. Fowler's would have been, if he had lived and instead of using the draft for the purpose intended, had repudiated that intention and taken it to the bank and sought to apply it on some of his current liabilities there.

When a person becomes the surety for another in a note, to be used for a particular object or purpose, the principal cannot divert it from that object, without the surety's assent. And if he do so divert it, neither he, nor any one with notice of the diversion, can maintain any action upon it, or set up any right by virtue of the transaction.

This principle will be found in *Denniston* v. *Bacon*, 10 Johns. 198. See also *Wardell* v. *Hughes*, 3 Wend. 418; *Brown* v. *Taber*, 5 ibid. 566; *Woodhull* v. *Holmes*, 10 Johns. 231; *Skild-*

*ing* v. *Warren*, 15 ibid. 270; *Beers* v. *Culver*, 1 Hill, 589; *Grandin* v. *Le Roy*, 2 Paige, 509.

In *Bonser* v. *Cox*, 4 Beavan, 379, 384; S. C. 5 Lond. Jurist Rep. 164,(*a*) John Cox made a joint and several promissory note with Richard Cox, to Messrs. Monells, for which the Monells were to advance the amount to Richard by two drafts at three months each. Instead of advancing the drafts, they made the advance in cash immediately. Lord Langdale, Master of the Rolls, held that John Cox, the surety, was thereby discharged. He also held that it made no difference, if it were shown that the money was applied for the purposes intended by the surety.

On these grounds, I am satisfied that the administrator of Fowler is not entitled to retain the draft as against the complainant; and the bank having received it, they must deliver up the note in question to the complainant. They must also refund to him the sum paid by him for the discount of the note.

The decree must be without costs. Mr. Brown was acting as administrator, and could not with safety relinquish the claim without the sanction of a court; while the other defendants stood in the situation of stakeholders, ready to yield to either party with the assent of the other, and incapable of deciding the nice question at issue between them.

---

(*a*) S. C. 6 Beav. 110; and affirmed on appeal, 9 March, 1844.